UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
OSSEO IMAGING, LLC,

                Plaintiff,

- against -

DENTSPLY SIRONA, INC., *et al.*

                Defendants.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
23-CV-7952 (PKC) (CHK)

PAMELA K. CHEN, United States District Judge:

Plaintiff Osseo Imaging, LLC ("Plaintiff") filed suit against Defendants Dentsply Sirona Inc., Sirona Dental Systems, LLC, and Sirona Dental, Inc. (collectively, "Dentsply" or "Defendants") on October 25, 2023, alleging infringement of Plaintiff's patents. (Compl., Dkt. 1.) On November 8, 2024, Defendants moved to dismiss the action, challenging the validity of Plaintiff's patents. (Dkt. 36.) For the reasons stated below, the motion to dismiss is denied.

## BACKGROUND[1]

### I.  Plaintiff's Patents

Plaintiff owns three patents relating to dental imaging systems, U.S. Patent Nos. 6,381,301, 6,944,262, and 8,498,374 (the "'301 Patent," the "'262 Patent," and "'374 Patent," respectively; collectively, "Plaintiff's patents").[2] (Compl., Dkt. 1, ¶ 1.) Ronaldo E. Massie ("Massie") applied for the '301 Patent in 1999; it was issued in 2002 and then expired in 2019. (*Id.* ¶¶ 11–12.) Massie

---

[1] For purposes of Defendants' motion, the Court accepts as true all non-conclusory factual allegations in the Complaint. *See Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106–07 (2d Cir. 2021) (citing *Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019)).

[2] Plaintiff has attached a copy of its patents to the Complaint. (*See* '301 Patent, Dkt. 1-1; '262 Patent, Dkt. 1-2; '374 Patent, Dkt. 1-3.) The Court considers the attached patents in deciding this motion. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citations omitted).

applied for the '262 Patent in 2003; it was issued in 2005 and then expired in 2020. (*Id.* ¶¶ 13–14.) Finally, Massie applied for the '374 Patent in 2012; it was issued in 2013 and then expired in 2019. (*Id.* ¶¶ 15–16.) Plaintiff was assigned the three patents in 2013. (*Id.* ¶ 17.) Plaintiff's patents describe a "dental and orthopedic densitometry modeling system" that includes "a controller with a microprocessor" connected to a memory device, an input device, an output device, and a three-axes positioning motor connected to X-ray equipment. ('301 Patent, Dkt. 1-1, at ECF[3] 2; *see also* '262 Patent, Dkt. 1-2, at ECF 4; '374 Patent, Dkt. 1-3, at ECF 4.)

Plaintiff's patents "teach improved dental X-ray imaging systems for generating tomographic models of dental structures which include densitometric data." (Compl., Dkt. 1, ¶ 18.) The patents combine the use of hardware devices to generate and store models of patients' dental structures as well as software that captures, processes, and stores these models for use by dentists. (*Id.* ¶ 19.) Further, they improve the detection and diagnosis of "dental pathologies," such as "[i]ncipient caries," "[d]ental fractures," and "apical abscesses," all of which "are particularly difficult to diagnose with conventional equipment," some "particularly in the early stages." ('301 Patent, Dkt. 1-1, at ECF 5.) The patents also "ha[ve] applications in monitoring osseointegration," which "can provide the dental . . . practitioner with important information in evaluating the effectiveness of implant procedures." (*Id.*) Plaintiff licenses and enforces these patents. (Compl., Dkt. 1, ¶ 20.)

## II. Defendants' Products

Defendants provide "3D dental imaging systems" which include "systems for topographically modeling a dental structure." (Compl., Dkt. 1, ¶ 5.) In particular, during the

---

[3] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

2

Damages Period[4] Defendants sold "a family of 3D dental imaging systems referred to as the Sirona 3D X-Ray Family," as well as "software for use with the Sirona 3D X-Ray Family," and "provided a computerized device . . . on which the Sirona Software was installed" (collectively, hereinafter, "the Sirona Systems"). (*Id.* ¶ 23.) The Sirona Systems "were operable to produce three-dimensional X-ray models of a patient's dental structure using cone beam computed tomography." (*Id.* ¶ 24.) "[T]he Sirona 3D X-Ray Family generated digital x-ray images and merged them into tomographic models" that included "bone density values calculated . . . with the use of a microprocessor." (*Id.*) These models were then "received, stored, and displayed on an output device . . . running the Sirona Software," which could include "a side-by-side function that linked . . . tomographic models of the same patient obtained at different times for comparison." (*Id.*) In simpler terms, the Sirona Systems include machines and software that allow for the scan of a patient's teeth and the presentation of a digital three-dimensional model of the teeth along with certain computations about the density of the teeth and comparisons to prior scans. Defendants sold these products in the United States and abroad. (*Id.* ¶ 26.)

Plaintiff now alleges that Defendants' systems infringed on Plaintiff's patents. It alleges that all elements of multiple claims for each of Plaintiff's patents were embodied in the Sirona Systems, establishing direct infringement, inducement of infringement, and contributory infringement. (*See id.* ¶¶ 32–49 (alleging violations of 35 U.S.C. § 271).) Plaintiff argues that these violations caused it "injury to business and property." (*Id.* ¶¶ 36, 43, 49.)

---

[4] Plaintiff defines the "Damages Period" as October 25, 2017, through August 9, 2020. (Compl., Dkt. 1, ¶ 23 n.1.)

### III. Defendants' Motion

Defendants move to dismiss Plaintiff's claims, arguing that Plaintiff's patents "are invalid as a matter of law because (1) [the patents] are directed to abstract ideas and (2) they do not include an inventive concept that limits them to patent-eligible subject matter." (Defs.' Mem. Support Mot. ("Mem."), Dkt. 36-1, at 1.)[5]  In support of this argument, Defendants rely on the two-step analysis described in *Alice Corporation Pty. Ltd. v. CLS Bank International, et al.*, 573 U.S. 208 (2014). (Mem., Dkt. 36-1, at 2, 13 (citing *Alice*, 573 U.S. at 221–23).)  Because, as discussed below, the Court finds at this stage of the litigation that *Alice* does not invalidate Plaintiff's patents, Defendants' motion is denied.

### IV. Related Litigation

#### A. The Delaware Litigation

Plaintiff previously brought an action enforcing these patents against a different defendant in the United States District Court for the District of Delaware. (Compl., Dkt. 1, ¶ 20.)  At trial, the jury found that Plaintiff's patents had been violated by the defendant, Planmeca USA Inc. ("Planmeca"). (*Id.* ¶ 22); *see also Osseo Imaging, LLC v. Planmeca USA Inc.* ("*Planmeca I*"), No. 17-CV-1386 (JFB), 2023 WL 1815975, at *1 (D. Del. Feb. 8, 2023).  There, Planmeca asserted a post-trial challenge to the verdict, arguing that Plaintiff's patents were invalid as a matter of law on the grounds of "obviousness" and "for lack of written description and enablement." *Planmeca I*, 2023 WL 1815975, at *3–*4.  The court rejected the challenge, holding that there was

---

[5] Though Defendants do not specify under which of the Federal Rules of Civil Procedure they seek dismissal, they argue that an asserted patent's validity "is a question of law . . . that may be resolved on a Rule 12(b)(6) motion." (Mem., Dkt. 36-1, at 11 (quoting *Athena Diagnostics, Inc. v. Mayo Collaborative Servs., LLC*, 915 F.3d 743, 749 (Fed. Cir. 2019)).)  The Court therefore construes Defendants' motion as one seeking dismissal for "failure to state a claim upon which relief can be granted" under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

4

sufficient evidence for the jury to reject the findings that would have been necessary to support both grounds for challenging Plaintiff's patents. *Id.* Planmeca appealed, and the Federal Circuit affirmed the district court's decision concerning obviousness on similar grounds, finding that "[s]ubstantial evidence support[ed] the jury's findings." *See Osseo Imaging, LLC v. Planmeca USA Inc.* ("*Planmeca II*"), 116 F.4th 1335, 1343–44 (Fed. Cir. 2024).

### B. The Georgia Litigation

Plaintiff also sought enforcement of Plaintiff's patents in an action in Georgia, where the defendant, Carestream Dental LLC ("Carestream"), moved to dismiss the case arguing that the patents were invalid under *Alice*, as Defendants do here. *Osseo Imaging, LLC v. Carestream Dental LLC* ("*Carestream*"), No. 23-CV-3116 (LMM), 2024 WL 5329866, at *2 (N.D. Ga. Oct. 17, 2024). Carestream similarly "argue[d] that [Plaintiff's] [p]atents are directed to abstract ideas" under the first step of the *Alice* inquiry. *Id.* at *3; *see Alice*, 573 U.S. at 216. The court rejected the argument, finding that the patents are "directed to a more specific technological process than . . . general ideas" and did not "merely replace[] existing technology." *Carestream*, 2024 WL 5329866, at *3. The parties thereafter settled. *See* Stipulation of Dismissal, *Carestream*, No. 23-CV-3116 (LMM) (N.D. Ga. Feb. 14, 2025), Dkt. 50.

### LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Hogan v. Fischer*, 738 F.3d 509, 514 (2d Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In assessing a complaint's sufficiency, a court "must construe [the complaint] liberally, accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiff['s] favor." *Sacerdote*, 9 F.4th at 106–07 (citing *Palin*, 940 F.3d at 809). "A claim is plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

5

defendant is liable for the misconduct alleged.'" *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678). Although the court must assume that all factual allegations contained in the complaint are true, this solicitude "does not extend 'to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Roe v. St. John's Univ.*, 91 F.4th 643, 651 (2d Cir. 2024) (quoting *Iqbal*, 556 U.S. at 678).

## DISCUSSION

### I. The Court Adopts Plaintiff's Proposed Claim Constructions for the Purposes of This Motion

Plaintiff argues that Defendants' motion should be precluded by questions of fact, in particular by the need for claim construction. (Pl.'s Opp'n ("Opp'n"), Dkt. 38, at 21–22.) Plaintiff proposes that the Court adopt the claim constructions made in the Delaware litigation for various claim terms. (*Id.* at 22–24.) Defendants disagree that claim construction is needed and instead argue the patents are invalid with or without a claim construction determination. (*See* Mem., Dkt. 36-1, at 7, 7 n.10.)

"When a non-moving party proposes a construction, 'the court must proceed by adopting the non-moving party's constructions, or the court must resolve the disputes to whatever extent is needed to conduct the [*Alice*] analysis [regarding patent validity].'" *Sanderling Mgmt. Ltd. v. Snap Inc.*, 65 F.4th 698, 704 n.3 (Fed. Cir. 2023) (quoting *Aatrix Software, Inc. v. Green Shades Software Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018)); *see UTTO Inc. v. Metrotech, Corp.*, 119 F.4th 984, 994 (Fed. Cir. 2024) (citing *Aatrix*, 882 F.3d at 1125). Here, the non-moving party, Plaintiff, has proposed claim constructions. (*See* Opp'n, Dkt. 38, at 23–24.) Given that Defendants claim that "the result is the same" "whether or not the Court accepts" these constructions, (Mem.,

6

Dkt. 36-1, at 7 n.10), the Court adopts Plaintiff's proposed constructions for the purpose of deciding this motion.

## II. The *Alice* Test

### A. Legal Standard

"Section 101 of the Patent Act defines the subject matter eligible for patent protection" and covers "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." *Alice*, 573 U.S. at 216 (quoting 35 U.S.C. § 101 ("Section 101")). But Section 101 also includes an "important implicit exception" in that "[l]aws of nature, natural phenomena, and abstract ideas are not patentable." *Id.* (quoting *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013)).

To determine patent eligibility, courts apply a two-step framework: at step one, courts "'determine whether the claims at issue are directed to a patent-ineligible concept' such as an abstract idea"; at step two, courts "'consider the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application.'" *PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310, 1314 (Fed. Cir. 2021) (quoting *Alice*, 573 U.S. at 217–18). The two steps are "plainly related" and "involve overlapping scrutiny of the content of the claims." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016) (citations omitted).

The first step looks "at the 'focus' of the claims" and "their 'character as a whole,'" while the second step inquires "more precisely at what the claim elements add—specifically, whether . . . they identify an 'inventive concept.'" *Id.* (citations omitted). Courts "conduct this analysis by ascertaining the 'basic character' of the claimed subject matter" and "often examine the focus of the claimed advance over prior art." *Contour IP Holding LLC v. GoPro, Inc.*, 113 F.4th 1373, 1379 (Fed. Cir. 2024) (citations and internal quotation marks omitted). This

7

advancement must be "directed to 'a specific means or method that improves the relevant technology' rather than simply being directed to 'a result or effect that itself is the abstract idea.' An improved result, without more is not enough." *Id.* (first quoting *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016); and then citing *Koninklijke KPN N.V. v. Gemalto M2M GmbH*, 942 F.3d 1143, 1150 (Fed. Cir. 2019)).

**B.     Step One**

1.     Storing, Collecting, and Displaying Information

Defendants describe Plaintiff's patents as directed to "the process of using a computer to store, collect, and display . . . information in dental and orthopedic applications," drawing parallels to the patents with similar language that the Federal Circuit have held abstract under step one. (Mem., Dkt. 36-1, at 13; *see, e.g.*, *id.* at 10 (describing *AI Visualize v. Nuance Commc'ns, Inc.*, 97 F.4th 1371 (Fed. Cir. 2024), as "illustrat[ing] the [Federal Circuit's] approach for determining whether claims are directed to an abstract idea"); *id.* at 14–17 (discussing additional cases).) Plaintiff responds by claiming that Defendants' description of Plaintiff's patents is a broad one that "fails to capture the specific technical components and solutions provided by the inventions." (Opp'n, Dkt. 38, at 9.) Plaintiff describes its patents as being directed towards "improv[ing] the capabilities of dental imaging systems by incorporating a specific implementation of a solution that addresses express technical problems."[6] (*Id.* at 11.) Plaintiff urges the Court to look to the Federal Circuit's decision in *Contour*, 113 F.4th 1373. (*Id.* at 12–14.)

---

[6] In its initial opposition, Plaintiff also relied on the non-obviousness findings made in *Planmeca I* and *Planmeca II*, but later "acknowledge[d] that th[ose] findings . . . are *not* directly on point with the issues presented here, and that the standards applied are different." (Pl.'s Suppl. Br., Dkt. 39, at 5 (citing *Ficep Corp. v. Peddinghaus Corp.*, No. 22-CV-1590, 2023 WL 5346043, at *7 (Fed. Cir. Aug. 21, 2023)).)

8

Notably, the court in *Carestream* rejected arguments similar to those Defendants make here. *See Carestream*, 2024 WL 5329866, at *3–4. The court there found that Plaintiff's patents "model[] a *new* type of data that was previously unattainable using conventional dental technology" because they "improve[] upon existing dental imaging technology by showing a patient's bone density" and "allow[] users to detect dental caries, fractures, and abscesses with greater accuracy than traditional X-ray technology." *Id.* at *3. The court also found that Plaintiff's patents and those at issue in *AI Visualize* and *Electric Power Group*, both cases Defendants rely on, could not be compared because *AI Visualize* and *Electric Power Group* "involved inventions that merely converted existing data from one format to another." *Id.* at *4 (citations omitted). Turning to *Contour*, the court found that that case concerned "a similar improvement to existing technology [that the Federal Circuit found] was not directed to an abstract concept." *Id.* at *3 (citation omitted).

The Court agrees with the finding in *Carestream* that Plaintiff's patents describe a system that does more than the "store, collect, and display" systems to which Defendants draw analogies. The plain text of the first claim of the '301 Patent[7] also recites the "merging of information from multiple tomographic scans," the use of these scans "to produce a representation of the subject," and the creation of new data through a calculation of "quantitative density differences . . . using densitometry from at least one focal point." (Opp'n, Dkt. 38, at 23.)  Further, the '301 Patent claims state that all steps are done with specific machines, that preexisting tomographic models could also be used by the invention, and that the steps described in the claims involve the conversion of signals. (*See id.* at 23–24.)  Especially under Plaintiff's proposed construction, (*id.*),

---

[7] The Court focuses on this claim because Defendants argue it is representative of the '301 Patent, (Mem., Dkt. 36-1 at 13), and is "directed to the same abstract idea" as the allegedly representative claims for the '374 Patent and '262 Patent, (*see id.* at 16, 18, 22).

9

the claims are specific about how the improvements are achieved and accordingly do not merely describe an "improved result," *see Contour*, 113 F.4th at 1379.

While Defendants claim that all of these steps can be reduced to "collecting and displaying" data, (Mem., Dkt. 36-1, at 18), the Court finds that to be an oversimplification of Plaintiff's proposed construction that impermissibly "describ[es] the claims at a high level of abstraction, divorced from the claim language itself," *Contour*, 113 F.4th at 1379 (citation omitted). As *Carestream* highlighted, "courts must 'be careful to avoid oversimplifying the claims' by describing them at a high level of generality." *Carestream*, 2024 WL 5329866, at *3 (quoting *McRO, Inc.*, 837 F.3d at 1313); *see also Alice*, 573 U.S. at 217 (recognizing that "[a]t some level, 'all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas,'" so courts must "tread carefully in construing this exclusionary principle lest it swallow all of patent law" (citations omitted)).

The *AI Visualize* decision does not counsel to the contrary, as its facts are materially distinguishable from those here. *AI Visualize* concerned patents "for viewing . . . a volume visualization dataset" by "accepting" and "stor[ing]" that dataset and, upon user requests, "creat[ing] virtual views" of volume visualization datasets. 97 F.4th at 1375. The processing of data described therein existed only insofar as it was necessary for the system to retrieve and store the data.[8] *See id.* at 1377–78. *Electric Power Group*, which the *Carestream* court also analyzed, likewise concerned a system that received data from various sources relating to power systems, detected and analyzed events in real time based on limits, sensitivities, and rates of change, and

---

[8] In *AI Visualize*, the system described by the patent's claims included features standard to network computer systems, such as load balancing, security, and physical storage—none of which are material to the comparison here. 97 F.4th at 1375. Likewise, the systems described in the claims of the other patents analyzed by the *AI Visualize* court also included different but standard techniques on handling storage and data caching that are immaterial to this analysis. *Id.*

10

displayed these measurements and events. 830 F.3d at 1351–52. Little more was done with the data; the system only "analyz[ed] information by steps people go through in their minds, or by mathematical algorithms, without more." *See id.* at 1354 (citations omitted). Thus, as the court concluded in *Carestream*, the patents at issue in *AI Visualize* and *Electric Power Group* are materially different from Plaintiff's patents. *See Carestream*, 2024 WL 5329866, at *4 (first citing *AI Visualize*, 97 F.4th at 1378–79; and then citing *Elec. Power Grp.*, 830 F.3d at 1353–53).

By contrast, Plaintiff's patents concern the merging and displaying of multiple tomographic scans, the creation of representations for these scans that include densitometry data from one or more focal planes, and comparisons with past models. (*See* Opp'n, Dkt. 38, at 23; '301 Patent, Dkt. 1-1, at ECF 7–8.) Taken as a whole, this system includes far more complex data processing than the "store, collect, and display" systems described in *AI Visualize* and *Electric Power Group*. *See also Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1008–09 (Fed. Cir. 2018) (affirming patent validity where the patent's claims described a method for navigating three-dimensional data that would otherwise require complex efforts). Instead, the claims here, like the ones held not abstract in *Contour*, allow the visualization and analysis of X-ray scans by a computer in ways "differently than it otherwise could" through "specific means" of generating densitometry data. 113 F.4th at 1380; *see also Data Engine Techs.*, 906 F.3d at 1008 (affirming validity of patent offering a "specific solution" to a "known technological problem"). As in *Contour*, the claims here concern a "technological solution to a technological problem"—the computation, visualization, and comparison of densitometry data otherwise not available in dentistry for addressing early-stage dental pathologies and monitoring of osseointegration. *See Contour*, 113 F.4th at 1380*; Broadband iTV, Inc. v. Amazon.com, Inc.*, 113 F.4th 1359, 1368 (Fed. Cir. 2024).

11

2. Combination of Conventional Components

In their reply, briefed after the *Carestream* decision, Defendants shifted their argument to claim that Plaintiff's patents are abstract because they concern a combination of "conventional component[s]" and that the patents' claims fail to identify "any improvement to the functionality of any conventional component" or "any problem overcome in combining the components." (Defs.' Reply ("Reply"), Dkt. 37, at 8.) Though Defendants recognize Plaintiff's arguement that there is an "improvement" in the way the tomography equipment is used, Defendants argue that the patents are invalid because Plaintiff's claimed improvement is importing a practice from the medical field. (*See id.* at 10.)[9] Defendants similarly distinguish *Contour* by arguing that Plaintiff merely uses "conventional components and equipment" and that "the improvement was a long-known or fundamental practice . . . in the medical imaging field." (*See id.* at 12 (citing 113 F.4th at 1380.)) These new arguments do not change the outcome.

Defendants' rejection of Plaintiff's claimed improvement overstates the language from Federal Circuit precedent. That a patent employs known or conventional components that existed in the prior art "does not necessarily mean that the claim is *directed* to an abstract idea . . . at step one [of *Alice*]." *Contour*, 113 F.4th at 1380 (collecting cases). And "the *Alice* inquiry is not a prior art search." *Broadband iTV, Inc*, 113 F.4th at 1367; *see CardioNet, LLC v. InfoBionic, Inc*, 955 F.3d 1358, 1372 (Fed. Cir. 2020) ("The 'novelty' of any element or steps in a process, or even

---

[9] Defendants also argue that the *Carestream* court: (1) should have considered the '301 Patent's initial rejection and framed the inventive concept around storage of existing information, (*see* Reply, Dkt. 37, at 2–3); (2) misapplied the law by focusing on what the patents "describe" rather than on the claims' language and how Plaintiff's patents achieve their solution, (*id.* at 4–5); and (3) failed to recognize that the bone density calculation that Plaintiff's patents describe as used for dentistry was previously available in different fields, (*id.* at 5–6). Since the Court does not defer to the *Carestream* decision, the Court does not find it necessary to address these arguments that relate specifically to the reasoning in *Carestream* other than to state that Defendants' protestations do not preclude the Court's conclusion here.

12

of the process itself, is of no relevance in determining whether the subject matter of a claim falls within the [Section] 101 categories of possibly patentable subject matter." (quoting *Diamond v. Diehr*, 450 U.S. 175, 188–89 (1981))).

Defendants rely on three cases that the Court finds inapplicable here and do not support the broad proposition for which Defendants cite them. (*See* Reply, Dkt. 37, at 10 (first citing *Bozeman Fin. LLC v. Fed. Rsrv. Bank of Atlanta*, 955 F.3d 971, 980 (Fed. Cir. 2020); then *Intell. Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1321 (Fed. Cir. 2016), and then *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1094 (Fed. Cir. 2016)).) All three concerned claims seeking to patent a well-established practice, with the only alleged innovation being the addition of the conventional use of computers and/or the Internet to that practice. *See Bozeman*, 955 at F.3d at 980; *Intell. Ventures*, 838 F.3d at 1321; *FairWarning*, 839 F.3d at 1094. But as *Carestream* highlighted, "this is not a situation 'where general-purpose computer components are added post-hoc to a fundamental economic practice or mathematical equation.'" 2024 WL 5329866 at *4 (quoting *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1339 (Fed. Cir. 2016)). Plaintiff's patents, as a whole, are directed to more than just the use of computers or tomography equipment, and in fact provide for new functionalities otherwise unavailable, *see supra*.

Accordingly, the Court finds that Plaintiff's patents are not directed at an abstract idea and, as such the Court does "not need to proceed to step two" of the *Alice* analysis." *Enfish, LLC*, 822 F.3d at 1339 (citing *Alice*, 573 U.S. at 217).

13

## CONCLUSION

For the reasons explained above, Defendants' motion to dismiss is denied. The matter is referred to Magistrate Judge Clay H. Kaminsky for pretrial proceedings.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: September 29, 2025
      Brooklyn, New York